UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NRRM, LLC, MARK TRAVIS, and NICHOLAS HAMILTON, | )<br>)<br>) |
| Plaintiffs/Counter-Defendants, | )<br>) |
| vs. | )<br>) |
| MEPCO FINANCE CORPORATION, | )<br>) |
| Defendant/Counter-Plaintiff, | )<br>) |
| and | )<br>) |
| MEPCO FINANCE CORPORATION, | )<br>) |
| Third-Party Plaintiff, | )<br>) |
| vs. | )<br>) |
| THE CHOICE MANUFACTURING CO., INC., | )<br>) |
| Third-Party Defendant, | )<br>) |
| and | )<br>) |
| THE CHOICE MANUFACTURING CO., INC., | )<br>) |
| Cross-Plaintiff, | )<br>) |
| vs. | )<br>) |
| NRRM, LLC, MARK TRAVIS and NICHOLAS HAMILTON, | )<br>)<br>) |
| Counter-Cross Plaintiff/Cross-Defendants. | ) |

10 C 4642

Judge Feinerman

### **MEMORANDUM OPINION AND ORDER**

This litigation arises out of a three-party business arrangement involving the financing,

administration, and sale of automobile warranty contracts and vehicle service contracts, which

-1-

for ease of exposition will be referred to together as warranties. NRRM, LLC, Mark Travis, and Nicholas Hamilton commenced this litigation by bringing suit against Mepco Finance Corporation. Doc. 4. Mepco filed a third-party complaint against The Choice Manufacturing Co., Inc., and counterclaims against NRRM, Travis, and Hamilton. Doc. 16. Choice, in turn, filed cross-claims against NRRM, Travis, and Hamilton, and counterclaims against Mepco. Docs. 28, 66. NRRM followed up with cross-claims against Choice. Docs. 36, 77.

The parties agreed that Mepco would move for summary judgment on liability before the completion of discovery. Doc. 87. Mepco filed one motion against Choice, Doc. 91, and another motion against NRRM, Travis, and Hamilton, Doc. 93. NRRM, Travis, and Hamilton, on the one hand, and Mepco, on the other, have since agreed to settle their respective claims against each other, Doc. 131, so Mepco's motion for summary judgment against those parties is denied without prejudice as moot. As a result of the settlement, Mepco is scaling back its claims against Choice, pursuing them only to the extent they relate to sellers (a term discussed below) other than NRRM. Accordingly, Mepco's motion for summary judgment against Choice is moot except to the extent it pertains to Mepco's claims arising from non-NRRM sellers. For the following reasons, the surviving portion of Mepco's motion as to Choice is denied.

**Background**

The facts at this stage are stated as favorably to Choice, the non-movant, as permitted by the record and Local Rule 56.1. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). Choice manufactured additive products designed to prolong the life of automobile components. Doc. 127 at ¶ 1. The additives were sold with warranties providing limited guarantees of the automobile components on which the additives were used. *Ibid*. Choice administered the warranties. Doc. 109 at ¶ 3; Doc. 127 at ¶ 1. Choice was a party to the warranty contracts with

consumers, and it administered and paid consumer repair claims.  Doc. 109 at ¶ 15.  Choice did not sell warranties directly to consumers.  *Id*. at ¶ 16.  Rather, Choice entered into agreements with sales agents, known as "sellers," to sell the warranties.  *Ibid*.  NRRM was among those sellers.  Doc. 127 at ¶ 2.

Consumers who purchased Choice's products were given the option of entering into a payment plan agreement with Mepco, under which the consumer would make monthly payments to Mepco over a defined period.  *Id*. at ¶ 3.  Mepco and Choice were parties to a written agreement ("Administrator Agreement") governed by Illinois law.  Doc. 109 at ¶ 7; Doc. 95-2.  The Agreement provided that Mepco, upon entering into a payment plan with a consumer, would pay certain amounts to Choice and to the seller.  Doc. 109 at ¶ 26.  The amount paid to Choice, called the "Dealer Cost," was comprised of an administrative fee and a reserve amount that Choice set aside to pay claims.  Doc. 95-2 at 2; Doc. 109 at ¶¶ 19, 26; Doc. 109-1 at ¶ 5.  The amount paid to the seller was called "Dealer Profit."  Doc. 95-2 at 2; Doc. 95-1 at 5; Doc. 109 at ¶¶ 20, 26.

As the purchasers of warranties made monthly payments to Mepco, Mepco was gradually repaid for the amounts that it had advanced to Choice and the seller.  Doc. 109 at ¶ 21.  If a purchaser made all scheduled payments, Mepco fully recouped the amounts it had advanced.  *Ibid*.  However, consumers had the right to cancel at any time.  *Id*. at ¶ 22.  Under Paragraph 3(c) of the Administrator Agreement, when a consumer cancelled before making sufficient payments to allow Mepco to recoup the amounts it had advanced to Choice and the seller, Choice was required to refund Mepco some portion of the amount that Mepco had advanced, with the amount of the refund based on a formula set forth in the Agreement.  *Id*. at ¶¶ 23, 27.  There were two components of the refund obligation: (1) the Refund Amount, which essentially

reflected a pro rata portion of the Dealer Profit and Dealer Cost; and (2) the Deficiency Remittance, which reflected late fees, other charges, and Mepco's Discount Amount. *Id*. at ¶¶ 28-29, 31. Mepco kept track of the this refund obligation in a Ledger Balance it sent to Choice. *Id*. at ¶ 28.

Sellers like NRRM were obligated to Mepco under a separate agreement, and Paragraph 7 of the Administrator Agreement required Choice to indemnify Mepco if any seller failed to satisfy those obligations. *Id*. at ¶¶ 32-33. When Choice's sellers went out of business, Mepco demanded that Choice pay Mepco the amount of those sellers' outstanding financial obligations to Mepco. *Id*. at ¶ 47.

According to the affidavit of its President, Peter Masi, Choice properly applied the Paragraph 3(c) formula to each warranty for which it received an invoice from Mepco and paid Mepco what it owed under the Agreement. Doc. 109 at ¶ 46; Doc. 127 at ¶ 6. During the course of Choice's relationship with Mepco, Choice refunded millions of dollars to Mepco. Doc. 127 at ¶ 7. Mepco was aware of how Choice calculated the refund amounts under Paragraph 3(c) and never informed Choice that Choice's calculation method was inappropriate. *Id*. at ¶ 8.

## Discussion

Mepco's amended third-party complaint pleads four counts against Choice: (1) breach of contract; (2) declaratory judgment; (3) indemnification; and (4) unjust enrichment. Doc. 58 at ¶¶ 56-66, 90-101. Mepco's motion does not specify the counts for which it seeks summary judgment. Doc. 91. Mepco's reply focuses on the contract claim, which rests on Paragraph 3(c) of the Administrator Agreement, and the indemnification claim, which rests on Paragraph 7 and which for all practical purposes is a contract claim. Doc. 129. The following discussion is limited to those claims.

Both the contract claim and the indemnification claim allege that Choice did not pay Mepco the amounts that Choice owed Mepco under the Administrator Agreement. Under Illinois law, a plaintiff alleging breach of contract must show: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC, v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. 2004)); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012); *Roberts v. Adkins*, 921 N.E.2d 802, 810 (Ill. App. 2010); *Kopley Grp. V, L.P. v. Sheridan Edgewater Props., Ltd.*, 876 N.E.2d 218, 226 (Ill. App. 2007). Choice opposes summary judgment on the ground that Mepco has failed to indisputably prove the third element.

Mepco's principal liability argument appears to be that the Administrator Agreement's plain language establishes Choice's contractual liability. Doc. 92 at 7-10, 15. Mepco is right that Paragraph 3(c) imposes payment obligations upon Choice in the event a customer cancels a warranty and that Paragraph 7 imposes certain indemnity obligations upon Choice in the event a seller defaults on its obligations to Mepco. Without more, however, this does not establish that Choice actually breached those obligations. Choice has not admitted to breaching its obligations, so the question becomes whether Mepco has adduced evidence indisputably showing that Choice has breached. Absent such evidence, summary judgment is inappropriate. *See Reger Dev.*, 592 F.3d at 764; *Gordon v. Vitalis Partners, LLC*, 2009 WL 1904545, at *3 (N.D. Ill. July 1, 2009) ("In order to establish that he is entitled to judgment as a matter of law on his breach of contract claim, Gordon must show … the failure of the breaching party to fulfill their corresponding obligations. To obtain the relief he seems, he must establish the facts

underlying these contentions in conformity with Local Rule 56.1.") (citing *Smith v. Jones*, 497 N.E.2d 738, 740 (Ill. 1986)).

In an effort to satisfy its evidentiary burden with respect to Paragraph 3(c), Mepco's Local Rule 56.1(a)(3) statement asserts that "[w]hile Mepco billed Choice for unearned Dealer Cost, Choice paid Mepco an amount that was generally less than what Mepco billed." Doc. 109 at ¶ 46. Choice's Local Rule 56.1(b)(3)(B) response disputes this assertion, and cites Masi's affidavit in support. *Ibid.* Masi avers that "Choice properly applied [the Paragraph 3(c)] formula for each and every warranty for which it received an invoice from Mepco and paid the amount of unearned Dealer Cost determined by this formula to Mepco for each such warranty. Thus, Choice properly paid the unearned Dealer Cost to Mepco on each invoice it has received from Mepco in accordance with the formula stated in the Administrator Agreement." Doc. 109-1 at ¶ 8. Because this evidence is sufficient to support Choice's denial of Mepco's assertion that Choice paid Mepco less than what Choice owed under Paragraph 3(c), the court must accept Choice's account as true for purposes of this motion. *See Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009) ("'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003) (same); *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008) (same). Masi's affidavit therefore creates a triable question of fact on the question whether Choice breached any of its payment obligations under Paragraph 3(c).

With respect to Paragraph 7, Mepco's Rule 56.1(a)(3) statement asserts that "Choice owes … $5.3 million for funding that Mepco advanced to other of Choice's sellers [meaning sellers other than NRRM] that are now out of business." Doc. 109 at ¶ 13; *see also* Doc. 129 at

7. Mepco's assertion rests on the declaration of Mepco business analyst Jim Jeske, who avers that "Choice owes an additional $5,332,995.63 for funding that Mepco advanced to other of Choice's sellers that are now out of business." Doc. 95-5 at ¶ 6; Doc. 125 at 2; Doc. 125-1 at 4. Jeske bases his calculation on his "review of Mepco's business records." *Id*. at ¶ 1.

Choice objects to Jeske's declaration on the ground that it rests on hearsay and fails to satisfy the business records exception to the hearsay rule. Doc. 108 at 5-8 (Choice's response brief); Doc. 109 at ¶ 13. Mepco offers no substantive response, and cites no case law or other authority, to rebut Choice's evidentiary challenge. Doc. 129 (Mepco's reply brief). Mepco's failure to respond operates as a forfeiture. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2011) (a party's failure to oppose an argument permits an inference of acquiescence, and "acquiescence operates as a waiver"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver."); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995). For this reason alone, Mepco's summary judgment motion is denied as it pertains to Choice's indemnification obligations under Paragraph 7.

Even putting aside forfeiture, the court would exclude the portion of the Jeske declaration that avers, based on his review of Mepco's records, that Choice owes $5.3 million for funding that Mepco advanced to non-NRRM sellers that later went out of business. "[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003). The challenged portion of Jeske's

declaration is admissible only if the underlying Mepco records are admissible. *See Toader v. JPMorgan Chase Bank*, 482 F. App'x 180, 183 (7th Cir. 2012) (affirming the district court's exclusion at summary judgment of portions of an affidavit that were based upon "sources that would be inadmissible as hearsay"); *Bryant v. Bd. of Educ., Dist. 228*, 347 F. App'x 250, 253 (7th Cir. 2009) (affirming the district court's exclusion at summary judgment of facts "based on inadmissible hearsay"); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) ("a party may not rely upon inadmissible hearsay in an affidavit … to oppose a motion for summary judgment").

The admissibility of the Mepco records is governed by Federal Rule of Evidence 803(6), which provides that the hearsay rule does not bar:

> A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). To be "admissible as business records under Fed. R. Evid. 803(6) … a proper foundation [must be laid] as to the reliability of the records." *Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998). To establish that foundation at summary judgment, "the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified

to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records." *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) (citations omitted).

Jeske attempts to lay *some* of the foundation required by Rule 803(6), averring: "I am a business analyst for [Mepco] and am authorized to make this declaration on behalf of Mepco, which I do based on my own personal knowledge and review of Mepco's business records kept in the regular course. I am familiar with and work regularly with Mepco's databases of business records and accounting information." Doc. 95-5 at ¶ 1. This satisfies subsections (B) and (D) of Rule 803(6). However, Jeske fails to satisfy subsections (A) or (C) because he does not state that the records he reviewed were "made at or near the time by—or from information transmitted by—someone with knowledge," or that "making the record was a regular practice of th[e] business] activity." Fed. R. Evid. 803(6)(A), (C). It follows that Jeske did not establish the admissibility of the Mepco business records; absent that predicate, Jeske's averment regarding Choice's liability under Paragraph 7 is inadmissible as well. *See United States v. Oros*, 578 F.3d 703, 708 (7th Cir. 2009) (holding that the district court erred in admitting summaries based on business records where there was no foundation for two of the "steps" under 803(6), explaining that "[w]ithout these steps, the government could not have laid the foundation necessary to demonstrate the admissibility, under the business records exception, of the underlying records or the summaries of those records."); *Lamar v. Experian Info. Sys.*, 408 F. Supp. 2d 591, 596 (N.D. Ill. 2006) ("Even though Rivas' affidavit parrots the language of Evid. Rule 803(6), on its face the letter flunks at least two and perhaps all three of those requirements (although even one failure would be fatal)."). And because the Jeske declaration provides the only evidentiary support for Mepco's assertion that "Choice owes an additional $5.3 million for funding that

Mepco advanced to other of Choice's sellers that are now out of business," Mepco's summary judgment filings fail to establish even a prima facie case of liability under Paragraph 7.

## Conclusion

For the foregoing reasons, the surviving portion of Mepco's partial motion for summary judgment as to liability against Choice is denied.

August 27, 2013

United States District Judge