UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

| | |
|---|---|
| NRRM, LLC, f/k/a National Dealers Warranty, Inc. and Auto Warranty Protection Services; MARK TRAVIS; and NICHOLAS HAMILTON, | Case No. 1:10-cv-4642<br>Honorable Gary Feinerman |
| Plaintiffs/Counter-Defendants, | |
| v. | **MEPCO FINANCE CORPORATION'S MOTION FOR ENTRY OF JUDGMENT AGAINST NRRM, LLC** |
| MEPCO FINANCE CORPORATION, | |
| Defendant/Counter-Plaintiff, | |
| and | |
| MEPCO FINANCE CORPORATION, | |
| Third-Party Plaintiff, | |
| v. | |
| THE CHOICE MANUFACTURING CO. INC., | |
| Third-Party Defendant, | |
| and | |
| THE CHOICE MANUFACTURING CO. INC., | |
| Cross-Plaintiff, | |
| v. | |
| NRRM, LLC, f/k/a National Dealers Warranty, Inc. and Auto Warranty Protection Services, | |
| Cross-Defendant/Counter-Cross-Plaintiff, | |
| And | |
| MARK TRAVIS; and NICHOLAS HAMILTON, | |
| Cross-Defendants. | |

**MEPCO FINANCE CORPORATION'S MOTION FOR ENTRY OF JUDGMENT AGAINST NRRM, LLC**

Mepco Finance Corporation ("Mepco"), by and through its counsel, hereby moves as follows:

## I. FACTUAL BACKGROUND

1. In its March 27, 2015, Memorandum Opinion and Order, the Court granted Mepco's Motion to Enforce Settlement Agreement. (Dkt. # 203.)

2. Specifically, the Court found that counsel for NRRM made a settlement offer to Mepco on May 30, 2013, which included the following terms: (1) total payment amount of $2.25 million; (2) 12.5 years to pay in equal monthly installments; (3) cure period of 15 days after written notice in the event of failure to pay; (4) mutual releases; and (5) dismissal of the lawsuit with prejudice. *(Id.* at 4.)

3. As the Court further noted, counsel for Mepco accepted NRRM's offer by return e-mail on May 30, 2013. (*Id*.) Specifically, counsel for Mepco wrote to counsel for NRRM and stated that "Mepco will accept the offer subject to a formal written agreement with customary terms." (Dkt. # 159, Mepco's Rule 56 Statement at ¶ 2.) Counsel for Mepco further clarified in his acceptance e-mail that the customary terms would include an acceleration clause and a consent judgment. (*Id*.)

4. In response to Mepco's counsel's May 30, 2013, e-mail that included the terms of an acceleration clause and consent judgment, NRRM's counsel confirmed that "[w]e have an agreement between NRRM and Mepco, with payments to begin August 1 [2013]." (Dkt. # 203 at 4; Dkt. # 159 at ¶ 3.)

5. As the Court is well aware, NRRM refused to honor the settlement agreement and failed to make its first payment on August 1, 2013. NRRM objected to the settlement agreement

based on its argument that the settlement was contingent on Choice dismissing its claims against NRRM. In its Memorandum Opinion and Order, the Court rejected NRRM's various arguments and held that Mepco and NRRM are parties to a settlement agreement with an effective date of May 30, 2013. (Dkt. # 203 at 14.)

## II. LAW AND ARGUMENT

6. As a result of the Court's ruling, and as set forth in the parties' written settlement communications, which included an offer, an acceptance with clarification of the terms, and a subsequent confirmation, the parties' settlement agreement contains the following terms: (1) a total payment amount of $2.25 million; (2) 12.5 years to pay the settlement amount in equal monthly installments; (3) an agreement that the first payment was due on August 1, 2013; (4) a cure period of 15 days after written notice in the event of failure to pay; (5) acceleration upon default after expiration of the cure period; (6) a consent judgment; (7) mutual releases of the claims in the lawsuit; and (8) dismissal of the lawsuit with prejudice.

7. As set forth above, NRRM is required to pay the settlement amount of $2.25 million in equal monthly payment over 12.5 years, which equates to monthly payments of $15,000. To date, NRRM has not made any payments to Mepco. Thus, NRRM currently owes Mepco $345,000 for the monthly payments that have accrued beginning on August 1, 2013 through June 1, 2015.

8. Counsel for NRRM has indicated that NRRM disputes the fact that the first settlement agreement was due on August 1, 2013. NRRM will apparently argue that it should not be required to begin making its monthly settlement payments to Mepco until some date after the Court ruled on Mepco's Motion to Enforce the Parties' Settlement Agreement. This argument

3

is presumably based on the fact that the August 1, 2013, payment term was not included in counsel for NRRM's May 30, 2013, offer e-mail.

9. However, as the Court noted in its Memorandum Opinion and Order, it is not just the terms of the offer that make up the parties' settlement agreement, but rather all of the terms that are contained in the offer, the acceptance, and the confirming e-mail: "NRRM does not dispute that its lawyer's May 30 email, Mepco's response that same day, and NRRM's June 5 confirmation all suffice to establish the formation of a valid contract." (Dkt. # 203 at 14 (emphasis added).) And in NRRM's confirming e-mail, counsel for NRRM indicated that payments would begin on August 1, 2003.

10. In the face of these undisputed facts regarding the terms of the parties' settlement agreement, NRRM's argument that it should not have to begin making payments until almost two after the effective date of the agreement is nothing less than an attempt to add a new, material term. The parties' settlement agreement required NRRM to make its first payment on August 1, 2013 and its final payment on January 1, 2026. NRRM now seeks to extend the term of the agreement by two years, such that it would be relieved from making any payments during the first two years of the agreement. There can be no question that this is an attempt to materially alter the parties' agreement.

11. Put another way, when Mepco agreed to settle its claims in May 2013, it did so based on the understanding that payments would begin immediately. Mepco would not have settled on those same terms had NRRM proposed that it would not be required to make any payments for two years. A two year delay in payments greatly reduces the benefit of the bargain for Mepco.

12. Indeed, Mepco has already lost some of the benefit of its bargain with NRRM, as it has lost the time value of the funds that it should have been receiving over the past two years. Conversely, NRRM has already received a significant windfall by virtue of its delay in making payments. It has retained the funds, and the time value of the funds, that it should have been paying to Mepco. NRRM should not now receive a second windfall of the forgiveness of the past due amounts, which is contrary to the terms of the parties' agreement.

13. In sum, it would be fundamentally unfair to allow NRRM to delay the <u>agreed-upon payment date</u> by two years simply because it filed a baseless motion to challenge the enforceability of the parties' agreement. The fact that NRRM unsuccessfully challenged the enforceability of the parties' agreement does not provide a factual or legal basis to change the agreed-upon start date for the settlement payments.

14. In addition to challenging the beginning payment date of August 1, 2013, Mepco anticipates that NRRM may also challenge the acceleration term of the parties' settlement agreement, again based on the argument that the acceleration term was not listed in NRRM's counsel's May 30, 2013, offer. For all of the reasons set forth above, the acceleration term is part of the settlement agreement, as it was explicitly set forth in the communication that collectively comprises the parties' agreement.

15. Moreover, excluding the acceleration term from the parties' settlement agreement would lead to an absurd result. There is no reason for the parties to agree to a default and written cure period without also contemplating an acceleration of the entire settlement amount. It would have been nonsensical for Mepco to agree to a written notice requirement and a cure period for a default without an acceleration term, which would create an endless cycle of late notices and waiting out cure periods just to earn the right to enforce each of the one hundred and fifty

payments. NRRM recognized this, as it agreed to and accepted the acceleration term in its confirming e-mail.

16. By way of analogy, it would be equally absurd for Mepco to argue that the mutual release term only applied to Mepco and NRRM and not to Mark Travis and Nicholas Hamilton simply because Travis and Hamilton are not referenced in the May 30, 2013, offer. Mepco would not make such an argument, as it knows that counsel for NRRM represents Travis and Hamilton. Likewise, it would be absurd for NRRM to suggest that the acceleration clause is not part of the settlement agreement because it is not in the offer e-mail, as it was specifically referenced in the acceptance and otherwise fits with the notice and cure terms of the parties' agreement.

17. Mepco's proposed judgment, which is attached as **Exhibit A**, provides for a mutual release of the claims at issue in the lawsuit. Pursuant to the parties' agreement, the judgment also provides for a dismissal with prejudice as to all of the parties other than NRRM and a dismissal with prejudice as to NRRM after NRRM satisfies its payment obligations under the settlement agreement. (See *Id*. at ¶ 6.) Consistent with the parties' agreed term of a consent judgment, this Court should retain jurisdiction so that it can enter a judgment in the event that NRRM defaults on its payment obligation and fails to timely cure that default.

18. Finally, Mepco is also entitled to prejudgment interest on the past due payments. The award of prejudgment interest in this case is governed by Illinois law. *See Perlman v. Zell,* 185 F.3d 850, 857 (7th Cir. 1999) ("prejudgment interest depends on the law that supplies the substantive rule of decision"). Under Illinois law, in the absence of an express contract provision allowing interest at a specific rate:

> Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other

instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment.

815 Ill. Comp. Stat. 205/2. The parties' correspondence that comprises their settlement agreement satisfies both the "instrument of writing" and "settlement of account" criteria under the Illinois prejudgment interest statute,[1] and Mepco is therefore entitled to interest on the past due payments at the statutory rate of five percent per annum. Mepco will submit a final interest calculation at or before the July 13, 2015, status conference, which will take into account any payment received from NRRM in the interim.

WHEREFORE, Mepco respectfully requests that the Court enter judgment in favor of Mepco and against NRRM in the form attached hereto as **Exhibit A**.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | VARNUM LLP |
|  | Attorneys for Mepco Finance Corporation |
| Date: June 17, 2015 | By: /s/ Brion B. Doyle |
|  | Brion B. Doyle (MI Bar #P67870) |
|  | Business Address and Telephone: |
|  | Bridgewater Place, P.O. Box 352 |
|  | Grand Rapids, MI 49501-0352 |
|  | (616) 336-6000 |
|  | bbdoyle@varnumlaw.com |

---

[1] *See, e.g., Milligan v. Gorman,* 348 Ill App 3d 411, 412; 810 NE2d 537 (1st Dist. 2004) (holding that settlement agreement is a written instrument under the Illinois prejudgment interest statute). The Illinois prejudgment interest act mandates prejudgment interest, as a matter of right, when the creditor seeks payment of a fixed sum on an instrument of writing. *Id.* at 416 ("When a written instrument establishes an amount due and the time for payment, the creditor has a right to interest.") (citing *New Hampshire Insurance Co. v. Hanover Insurance Co.,* 296 Ill.App.3d 701, 706–07; 696 N.E.2d 22 (1998); *Tomaso v. Plum Grove Bank,* 130 Ill.App.3d 18, 29; 473 N.E.2d 588 (1985)).

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 17th day of June, 2015, a true and correct copy of the foregoing was served via the Court's ECF system to:

Jeffrey H. Kass
John A. Leja
Polsinelli PC
100 South Fourth Street, Suite 1000
St. Louis, MO 63102
jkass@polsinelli.com
jleja@polsinelli.com

Mark A. Brand
Polsinelli PC
161 North Clark Street, Suite 4200
Chicago, IL 60601-3316
mbrand@polsinelli.com

Phillip R. Perdew
Douglas R. Sargent
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606
rperdew@lockelord.com
dsargent@lockelord.com

Michael J. Grant
Tabet DiVito & Rothstein LLC
209 South LaSalle Street, 7th Floor
Chicago, IL 60604
mgrant@tdrlawfirm.com

/s/ Brion B. Doyle
Brion B. Doyle
bbdoyle@varnumlaw.com

9508960_1.docx